FILED

JUL 18 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN FEDERAL DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OHIO

JUDGE ZOUHARY

MAG JUDGE CLAY

KHOLOUD IBRHIM,

            Plaintiff,

      v.

ROBBIE MUHAMMAD ABDELHOQ,

MUHAMMAD A. ABDELHOQ, AND

CHAFICA S. ABDELHOQ,

            Defendants.

No. **3:22 CV 1260**

**COMPLAINT FOR BREACH OF THE U.S. CITIZENSHIP AND IMMIGRATION SERVICES FORM I-864, AFFIDAVIT OF SUPPORT UNDER SECTION 213A OF THE IMMIGRATION AND NATIONALITY ACT (8 U.S.C. § 1183a(e)(1))**

[The remainder of this page is left blank]

# I. INTRODUCTION

1.     This is a lawsuit for immigration financial support under the United States and Immigration Services ("USCIS") Form I-864, Affidavit of Support Under Section 213A of the Immigration and Nationality Act ("Affidavit of Support").

2.     The Affidavit of Support was created by the United States Congress in 1996 to ensure that family-sponsored immigrants are ensured a basic level of financial wellbeing, sufficient to meet the most basic needs of life.

3.     In mandating the Affidavit of Support, Congress required visa petitioners, rather than the American people, serve as a financial safety net to new immigrants.

4.     The Affidavit of Support is a legally binding contract between the sponsor and the United States government, of which the intending immigrant is a third-party beneficiary.

5.     Plaintiff Kholoud Ibrhim is the beneficiary of an Affidavit of Support signed by her former husband, Defendant Robbie Muhammad Abdelhoq (the "Primary Affidavit of Support"). She is also the beneficiary of a second Affidavit of Support executed by Robbie Abdelhoq's father, Defendant Muhammad Abdelhoq (the "Joint Sponsor Affidavit of Support"). Muhammad Abdelhoq's wife, Chafica Abdel, signed a third contract agreeing to share liability under the Joint Sponsor Affidavit of Support.

6.    The Defendants share a collective legal duty to maintain Ms. Ibrhim's income at a level equal to 125 percent of the Federal Poverty Guidelines ("Poverty Line"). Because her income has been below that level, the Defendants are jointly and severally liable for damages equal to the difference between the Plaintiff's actual income and 125 percent of the Poverty Line.

## II. JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the federal Immigration and Nationality Act *See* 8 U.S.C. § 1183a(e)(I).

8.    This Court has personal jurisdiction over the Defendants as, by signing Affidavits of Support and the Household Member Contract, they submitted to the jurisdiction of any court with subject matter jurisdiction over the Plaintiff's claims. 8 U.S.C. § 1183a(a)(1)(C).

9.    Venue is proper in this District as all the Defendants reside in this District. 28 U.S.C. § 1391(b)(1).

10.    Venue is further proper in this District as a substantial part of the events or omissions giving rise to the claims occurred in this District, to wit, the damages Ms. Ibrhim suffered by virtue of the Defendants' breach of contract. 28 U.S.C. § 1391(b)(2).

[The remainder of this page is left blank]

### III. PARTIES

11.     Plaintiff Kholoud Ibrhim (formerly known as Kholoud Ahmed Mohamed Abdelhoq and Kholoud Ahmed Mohamed Shakarna) is a citizen of the State of Palestine.

12.     Ms. Ibrhim resides in Bowling Green, Ohio.

13.     Defendant Robbie Muhammad Abdelhoq is a citizen of the United States of America and is the Plaintiff's former spouse. Mr. R. Abdelhoq resides in Northwood, Ohio.

14.     As further alleged below, Mr. R. Abdelhoq served as the Plaintiff's immigration sponsor by executing the Primary Affidavit of Support, thereby contractually promising to provide a specified level of income to the Plaintiff.

15.     Muhammad A. Abdelhoq is a citizen of the United States of America and is Mr. R. Abdelhoq's father.  Mr. M. Abdelhoq resides in Northwood, Ohio.

16.     As further alleged below, Mr. A. Abdelhoq served as the Plaintiff's immigration co-sponsor by signing the Joint Sponsor Affidavit of Support, thereby contractually promising to provide a specified level of income to the Plaintiff.

17.     Chafica S. Abdelhoq is a citizen of the United States of America and is Mr. A. Abdelhoq's wife. Ms. Abdelhoq resides in Northwood, Ohio.

18.     As further alleged below, Mr. A. Abdelhoq served executed the Household Member Contract, agreeing to be jointly and severally liable with respect to Mr. A. Abdelhoq's financial support obligation to the Plaintiff.

# IV. FACTUAL ALLEGATIONS

**Background concerning the Affidavit of Support.**

19.    Since 1882 federal law has excluded the immigration of individuals considered "likely to become a public charge." Act of Aug. 3, 1882, 22 Stat. 214.

20.    The current immigration statute, in effect at all times material to the facts alleged herein, forbids the entry of immigrants determined likely to become a "public charge." 8 U.S.C. § 1182(a)(4).

21.    The Affidavit of Support is required for a family-based immigrant visa applicant to overcome public charge inadmissibility. *See* 8 U.S.C. § 1182(a)(4)(C).

22.    The only family-based immigrants who are exempt from submitting an Affidavit of Support are those classes listed at 8 C.F.R. § 213a.2(a)(2)(ii), to wit: (A) self-petitioners under the Violence Against Women Act; (B) grandfathered immigrants with petitions pending prior to December 19, 1997; (C) those who have worked and/or may be credited with 40 qualifying quarters of coverage as defined under title II of the Social Security Act; (D) a child admitted under 8 U.S.C. § 1181(a) and 8 C.F.R. § 211.1(b)(1);  and (E) a child who will automatically acquire citizenship under 8 U.S.C. § 1431.

23.    The Affidavit of Support has been mandatory in marriage-based immigrant visa cases at all times material to the case at bar.

24.    Once executed, the Affidavit of Support is a legally binding contract between the sponsor and the United States Government. 8 U.S.C. § 1183a(a)(1)(B).

25. By signing the Affidavit of Support, the sponsor agrees to provide the intending immigrant with any support necessary to maintain her at an income that is at least 125 percent of the Federal Poverty Guidelines for her household size. 8 U.S.C. § 1183a(a)(1)(A).

26. As used in the Affidavit of Support, 8 U.S.C. § 1183a, and 8 C.F.R. Part 213a, "income" means an individual's total income (or adjusted gross income for those who file IRS Form 1040EZ) for purposes of the individual's U.S. Federal income tax liability, including a joint income tax return. 8 C.F.R. § 213a.1.

27. The Federal Poverty Guidelines ("poverty line") are published annually in the Federal Register.

28. In any given year for which a sponsored immigrant is entitled to support under the Affidavit of Support, she is entitled to support based on the poverty line in effect for that year according to the individual's U.S. state of residency.

29. The Affidavit of Support obligation may be enforced by the immigrant beneficiary, who is a third-party beneficiary thereof. 8 U.S.C. § 1183a(a)(1)(B); 8 C.F.R. § 213a.2(d).

30. Per 8 C.F.R. § 213a.4(a)(2) a sponsored immigrant is not required to make any demand for payment from a sponsor prior to commencing a lawsuit to enforce the sponsorship obligation under the Affidavit of Support.

31. By signing the Affidavit of Support, the sponsor agrees to submit to the personal jurisdiction of any federal or state court that has subject matter

jurisdiction over a lawsuit against the sponsor to enforce obligations under the Affidavit of Support. 8 U.S.C. § 1183a(a)(1)(C).

32.     By signing the Affidavit of Support, the sponsor certifies under penalty of perjury that the sponsor has read and understands each part of the obligations described in the Affidavit of Support and agrees freely and without any mental reservation or purpose of evasion to accept ach of those obligations in order to make it possible for the immigrant(s) listed in the Affidavit of Support to become lawful permanent residents of the United States.

33.     The Affidavit of Support sponsor also agrees to notify the Government of any change in the sponsor's address within 30 days of the change by filing a Form I-865. *See* 8 U.S.C. § 1183a(d).

34.     A sponsor's duties under the Affidavit of Support commence when the beneficiary becomes a Resident based on and application that included the Affidavit of Support.

35.     An Affidavit of Support sponsor must continue to perform under the contract until the occurrence of one of five events (collectively "the Terminating Events") set forth in the contract.[1]

36.     The sponsor's obligation under the Affidavit of Support concludes once the beneficiary becomes a U.S. citizen (the "First Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(A).

---

[1] The term "Terminating Event" is not a term of art under the Immigration and Nationality Act, and is used here to refer collectively to the legal events that conclude the sponsor's obligations under the Affidavit of Support.

37. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary has worked or can receive credit for 40 quarters of work under the Social Security Act (the "Second Terminating Event"). 8 U.S.C. § 1183a(a)(3)(A); 8 C.F.R. § 213a.2(e)(2)(i)(B).

38. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary is no longer a permanent resident and has departed the U.S. (the "Third Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(C).

39. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary is subject to an order of removal but applies for and obtains in removal proceedings a new grant of adjustment of status based on a new affidavit of support, if required (the "Forth Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(D).

40. The sponsor's obligation under the Affidavit of Support concludes once the beneficiary dies (the "Fifth Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(E).

41. An immigration petitioner who lacks income sufficient to serve as an Affidavit of Support sponsor may obtain the assistance of an additional individual who agrees to serve as a "joint sponsor" by executing and filing an additional Affidavit of Support. 8 U.S.C. § 1183a(f)(5)(A).

42. By signing the Affidavit of Support a joint sponsor is jointly and severally liable to the Affidavit of Support beneficiary, as between the primary and joint sponsor. 8 U.S.C. § 1183a(f)(5)(A); 8 C.F.R. § 213a.1.

43.     An Affidavit of Support is considered executed once it is signed and submitted to either USCIS or the Department of State in support of an intending immigrant's application. 8 C.F.R. § 213a.2(a)(B)(ii).

44.     Once executed, the Affidavit of Support becomes a binding contract between the sponsor and the United States government for the benefit of the sponsored immigrant. 8 C.F.R. § 213a.2(d).

45.     A sponsor's support obligation under the Affidavit of Support commences when an intending immigrant obtains Resident status on the basis of an application that included the sponsor's Affidavit of Support. 8 C.F.R. § 213a.2(e)(1).


**The Household Member Contract.**

46.     Where an individual lacks sufficient wherewithal to serve as an Affidavit of Support sponsor in their own right, they may rely upon the income of a qualifying household member. For such income to be considered, the household member must execute a USCIS Form I-864A, Contract Between Sponsor and Household Member ("Household Member Contract").[2] 8 C.F.R. 213a § 213a.2(c)(2)(i)(C)(1).

---

[2] The Household Member Contract is referred to in the implementing regulations of 8 U.S.C. § 1183a at 8 C.F.R. Part 213a as the "affidavit of support attachment." *Cf.* 8 C.F.R. 213a § 213a.2.

47.     The Household Member Contract is an agreement between the household member and the Affidavit of Support sponsor. 8 C.F.R. 213a § 213a.2(c)(2)(i)(C)(2).

48.     By signing the Household Member Contact, the household member agrees to provide the sponsor with as much financial assistance is needed to maintain the income of the sponsored intending immigrant at 125 percent of the poverty line for their household size. 8 C.F.R. 213a § 213a.2(c)(2)(i)(C)(2).

49.     The intending named in the Affidavit of Support is a third-party beneficiary of the Household Member Contract and has standing to enforce the household member's obligation. 8 C.F.R. 213a § 213a.2(c)(2)(i)(C)(2).

50.     The financial obligation under the Household Member Contract commences with the intending immigrant becomes a Resident based on an application that included the Contract. 8 C.F.R. 213a § 213a.2(e)(1).

51.     The financial obligation under the Household Member Contract ends upon the same five Terminating Events that apply to the Affidavit of Support. 8 C.F.R. 213a § 213a.2(e)(2).

**Plaintiff's acquisition of status as a lawful permanent resident ("Resident") of the United States of America.**

52.     Ms. Ibrhim and Mr. R. Abdelhoq were married in Bowling Green, Ohio on March 12, 2012.

53.     Mr. R. Abdelhoq thereafter commenced the process of facilitating Ms. Ibrhim's immigration to the United States.

54.     On April 24, 2012, Mr. R. Abdelhoq signed a U.S. Citizenship and Immigration Services ("USCIS") Form I-130, Petition for Alien Relative (the "Visa Petition").

55.     Exhibit 4 is a copy of the Visa Petition, as contained in Ms. Ibrhim's Alien File.

56.     The Visa Petition listed Plaintiff as the intending immigrant beneficiary of the petition. Exhibit 4, p. 1.

57.     Mr. R. Abdelhoq caused the signed Visa Petition to be transmitted to USCIS.

58.     By filing the Visa Petition, Mr. R. Abdelhoq initiated the process of securing United States Residency status for Ms. Ibrhim.

59.     On April 24, 2012, Ms. Ibrhim signed a USCIS Form I-485, Application to Register Permanent Residence of Adjustment Status (the "Residency Application").

60.     Exhibit 5 is a copy of the Residency Application, as contained in Ms. Ibrhim's Alien File.

61.     Under the "Application Type or Filing Category," Ms. Ibrhim indicated that her application was based on an immediate relative visa petition. Exhibit 5, p. 1.

62. Ms. Ibrhim's Residency application was based on Mr. R. Abdelhoq's Visa Petition as but for the Visa Petition, she would not have qualified to file the Residency Application based on the class of admission listed therein.

63. The Residency Application was filed with USCIS.

64. Ms. Ibrhim did not qualify for any of the grounds listed at 8 C.F.R. § 213a.2(a)(2)(ii) that could have exempted her from the requirement to file an Affidavit of Support.

65. On April 24, 2012, Mr. R. Abdelhoq signed the Primary Affidavit of Support, listing Ms. Ibrhim as the intending immigrant beneficiary.

66. A copy of the Primary Affidavit of Support, as contained in Ms. Ibrhim's Alien File is attached as Exhibit 1.

67. Mr. R. Abdelhoq caused the Primary Affidavit of Support to be filed with USCIS in support of Ms. Ibrhim's Residency Application.

68. Upon being filed in support of the Residency application, the Affidavit of Support was deemed executed and is an enforceable contract. 8 C.F.R. § 213a.2(a)(B)(ii); 8 C.F.R. § 213a.2(d).

69. On April 24, 2012, Mr. A. Abdelhoq signed the Joint Sponsor Affidavit of Support, listing Ms. Ibrhim as the intending immigrant beneficiary.

70. A copy of the Joint Sponsor Affidavit of Support, as contained in Ms. Ibrhim's Alien File is attached as Exhibit 2.

71. Mr. R. Abdelhoq caused the Joint Sponsor Affidavit of Support to be filed with USCIS in support of Ms. Ibrhim's Residency Application.

72.     Upon being filed in support of the Residency application, the Affidavit of Support was deemed executed and is an enforceable contract. 8 C.F.R. § 213a.2(a)(B)(ii); 8 C.F.R. § 213a.2(d).

73.     On April 24, 2012, Ms. Chafica Abdelhoq signed the Household Member Contract, listing Ms. Ibrhim as the intending immigrant beneficiary.

74.     A copy of the Household Member Contract, as contained in Ms. Ibrhim's Alien File is attached as Exhibit 3.

75.     Ms. Abdelhoq caused the Household Member Contract to be filed with USCIS in support of Ms. Ibrhim's Residency Application.

76.     Upon being filed in support of the Residency application, the Household Member Contract was deemed executed and is an enforceable contract. 8 C.F.R. § 213a.2(a)(B)(ii); 8 C.F.R. § 213a.2(d).

77.     Defendant R.M. Abdelhoq and the Plaintiff had a son, R.M.A., born in 2013.

78.     R.M.A. is the only child of Defendant R.M. Abdelhoq and the Plaintiff.

79.     R.M.A. was born in Toledo, Ohio and is a citizen of the United States of America.

80.     On January 17, 2013, USCIS approved the Visa Petition. Exhibit 4, p. 1.

81.     On January 17, 2013, USCIS approved the Residency Application. Exhibit 5, p. 1.

82.     Ms. Ibrhim became a Resident on January 17, 2013.

83.     As of January 17, 2013, Ms. Ibrhim was admitted for permanent residence per Section 101(a)(20) of the Immigration and Nationality Act ("INA").

84.     Ms. Ibrhim's Resident status was subject to the conditions and responsibilities set forth ac INA Sections 216 and 216A. *Cf.* 8 C.F.R. § 216.1.

**Subsequent U.S. immigration history.**

85.     Ms. Ibrhum and Defendant Robbie Abdelhoq separated on January 26, 2014.

86.     On or about December 2, 2014, Ms. Ibrhim filed a USCIS Petition to Remove Conditions on Residence ("Removal of Conditions Petition").

87.     A copy of Ms. Ibrhim's Removal of Conditions Petition is attached as Exhibit 6.

88.     On June 29, 2015, Defendant Robbie Abdelhoq filed for divorce from Ms. Ibrhim in the Court of Common Pleas for Wood County Ohio ("Wood County Court") (Case Number 2-15RD0104).

89.     On October 23, 2015, the Wood County Court entered a final judgment for divorce.

90.     A copy of the final judgment for divorce is attached as Exhibit 7.

91.     Neither party was awarded alimony in the divorce proceeding.

92.     Ms. Ibrhim did not seek to enforce the Affidavits of Support or Household Member Contract in the divorce proceeding.

93.     USCIS denied Ms. Ibrhim's Removal of Conditions Petition on September 13, 2016.

94.     On October 7, 2016, the USCIS Field Office for Cleveland, Ohio issued a Notice to Appear to Ms. Ibrhim.

95.     A copy of the Notice to Appear is attached as Exhibit 9.

96.     The Notice to Appear alleged that Defendant Robbie Abdelhoq had not been lawfully eligible to marry Ms. Ibrihim at the time of their marriage, and that Ms. Ibrhim had concealed that fact at the time of the interview for her Residency Application.

97.     The Notice to Appear charged Ms. Ibrhim as removable under INA Sections 237(a)(1)(D)(i) (conditional resident who's status is subject to termination), 237(a)(1)(A)(i)(I) (alien not in possession of visa or other suitable travel document), and 237(a)(6)(C)(i) (seeking to procure immigration benefit by fraud or willful misrepresentation of material fact).

98.     The Notice to Appear was not filed with the Executive Office for Immigration Review.

99.     On November 8, 2016, Ms. Ibrhim filed a USCIS Form I-360 Petition for Amerasian, Widow(er), or Special Immigrant, pursuant to the Violence Against Women Act as a self-petitioning survivor of domestic abuse ("VAWA Self-Petition").

100.     Ms. Ibrhim's VAWA Self-Petition is subject to federal privacy protection and is not filed with this Complaint. USCIS assigned the Petition receipt number EAC-17-032-50284.

101.     USCIS approved Ms. Ibrhim's VAWA Self-Petition on April 13, 2018.

102.     On September 4, 2018, USCIS issued Mr. Ibrhim an Employment Authorization Document ("EAD") on the basis of her VAWA Self-Petition.

103.     A copy of the approval notice for her Ms. Ibrhim's September 4, 2018 EAD is attached as Exhibit 10.

104.     Ms. Ibrhim is in the process of reapplying for Residency status on the strength of her approved VAWA Self-Petition and is represented in this matter by a representative from the non-profit Advocates for Basic Legal Equality in Toledo, Ohio.

**Defendants' breach of contract.**

105.     The Defendants' duties under the Affidavits of Support and Household Member Contract commenced on January 17, 2013.

106.     Ms. Ibrhim's Conditional Resident status was based on an application that included the Affidavits of Support and Household Member Contract.

107.     The Affidavits of Support and Household Member Contract were "executed" and therefore are enforceable contracts. 8 C.F.R. § 213a.2(a)(B)(ii); 8 C.F.R. § 213a.2(d).

108.    Exhibit 9 is a copy of Ms. Ibrhim's Social Security statement issued May 12, 2022.

109.    Ms. Ibrhim's income for 2014 through 2021 is accurately set forth in Exhibit 10.

110.    In 2014, the Plaintiff and her then-husband, Mr. R. Abdelhoq, where separated.

111.    Since her separation from Mr. R. Abdelhoq, Ms. Ibrhim's income has been beneath 125 percent of the Poverty Line as set forth below.

112.    For the convenience of the parties and the Court, the Plaintiff's damages are summarized in a table set forth in the Appendix.

113.    In **2014**, 125% of the Poverty Line for a household of one in the lower 48 contiguous states was $14,587.50.

114.    In 2014, Ms. Ibrhim earned $210 in taxable income.

115.    In 2014, the Defendants provided no financial support to Ms. Ibrhim pursuant to their obligations under the Affidavits of Support and Household Member Contract.

116.    In 2014, Ms. Ibrhim suffered direct damage in the amount of $14,377.50.

117.    In **2015**, 125% of the Poverty Line for a household of one in the lower 48 contiguous states was $14,712.50.

118.    In 2015, Ms. Ibrhim earned no taxable income.

119.    In 2015, the Defendants provided no financial support to Ms. Ibrhim pursuant to their obligations under the Affidavits of Support and Household Member Contract.

120.    In 2015, Ms. Ibrhim suffered direct damage in the amount of $14,712.50.

121.    In **2016**, 125% of the Poverty Line for a household of one in the lower 48 contiguous states was $14,850.00.

122.    In 2016, Ms. Ibrhim earned $4,838 in taxable income.

123.    In 2016, the Defendants provided no financial support to Ms. Ibrhim pursuant to their obligations under the Affidavits of Support and Household Member Contract.

124.    In 2016, Ms. Ibrhim suffered direct damage in the amount of $10,012.

125.    In **2017**, 125% of the Poverty Line for a household of one in the lower 48 contiguous states was $15,070.00.

126.    In 2017, Ms. Ibrhim earned $2,057 in taxable income.

127.    In 2017, the Defendants provided no financial support to Ms. Ibrhim pursuant to their obligations under the Affidavits of Support and Household Member Contract.

128.    In 2017, Ms. Ibrhim suffered direct damage in the amount of $13,013.

129.    In **2018**, 125% of the Poverty Line for a household of one in the lower 48 contiguous states was $15,175.00.

130.    In 2018, Ms. Ibrhim earned $1,599 in taxable income.

131. In 2018, the Defendants provided no financial support to Ms. Ibrhim pursuant to their obligations under the Affidavits of Support and Household Member Contract.

132. In 2018, Ms. Ibrhim suffered direct damage in the amount of $13,576.

133. In **2019**, 125% of the Poverty Line for a household of one in the lower 48 contiguous states was $15,612.50.

134. In 2019, Ms. Ibrhim earned no taxable income.

135. In 2019, the Defendants provided no financial support to Ms. Ibrhim pursuant to their obligations under the Affidavits of Support and Household Member Contract.

136. In 2019, Ms. Ibrhim suffered direct damage in the amount of $15,612.50.

137. In **2020**, 125% of the Poverty Line for a household of one in the lower 48 contiguous states was $15,950.00.

138. In 2020, Ms. Ibrhim earned $983 in taxable income.

139. In 2020, the Defendants provided no financial support to Ms. Ibrhim pursuant to their obligations under the Affidavits of Support and Household Member Contract.

140. In 2020, Ms. Ibrhim suffered direct damage in the amount of $14,967.

141. In **2021**, 125% of the Poverty Line for a household of one in the lower 48 contiguous states was $16,100.00.

142. In 2021, Ms. Ibrhim earned $2,919 in taxable income.

143.    In 2021, the Defendants provided no financial support to Ms. Ibrhim pursuant to their obligations under the Affidavits of Support and Household Member Contract.

144.    In 2021, Ms. Ibrhim suffered direct damage in the amount of $13,181.

145.    Through December 31, 2021, Ms. Ibrhim suffered direct damages in the amount of $109,451.50.

146.    In **2022**, 125% of the Poverty Line for a household of one in the lower 48 contiguous states was $16,988.00.

147.    In 2022, Ms. Ibrhim's taxable income to date has been under 125 percent of the Poverty Line.

148.    In 2022, the Defendants have provided no financial support to Ms. Ibrhim pursuant to their obligations under the Affidavits of Support and Household Member Contract.

149.    In 2022, Ms. Ibrhim has suffered direct damage in an amount to be determined at trial.

**Facts concerning Terminating Events.**

150.    No event has occurred that would constitute a Terminating Event under the Affidavits of Support.

151.    First Terminating Event has not occurred because Ms. Ibrhim has not become a U.S. citizen.

152. The Second Terminating Event has not occurred because Ms. Ibrhim has neither worked nor can receive credit for 40 quarters of work under the Social Security Act.

153. As of May 12, 2022, Ms. Ibrhim could be credited with seven (7) quarters of work under the Social Security Act.

154. The Third Terminating Event has not occurred because Ms. Ibrhim has not both lost status as a permanent resident and departed from the U.S.

155. The Forth Terminating Event has not occurred because the Ms. Ibrhim is not both subject to an order of removal and has also applied for and obtained in removal proceedings a new grant of adjustment of status based on a new affidavit of support (if required).

156. The Fifth Terminating Event has not occurred because Ms. Ibrhim is alive.

157. The denial of Ms. Ibrhim's Removal of Conditions Petition had no effect on the enforceability of the Affidavits of Support or Household Member Contract.

158. Mr. R. Abdelhoq's duties under the Primary Affidavit of Support remain in effect.

159. Mr. M. Abdelhoq's duties under the Joint Sponsor Affidavit of Support remain in effect.

160. Ms. Abdelhoq's duties under the Household Member Contract remain in effect.

# V. CLAIMS FOR RELIEF

## 1 – Breach of contract – Robbie Abdelhoq (Primary Affidavit of Support).

161.    Ms. Ibrhim re-alleges and incorporates all paragraphs above as though fully stated herein.

162.    By executing the Primary Affidavit of Support, Mr. R. Abdelhoq entered into an express written contract with the United States Government.

163.    Ms. Ibrhim is a third-party beneficiary of the Primary Affidavit of Support.

164.    Ms. Ibrhim has standing as third-party to enforce her rights under the Primary Affidavit of Support.

165.    Under the express terms of the Primary Affidavit of Support, Mr. R. Abdelhoq agreed to provide Ms. Ibrhim with any support necessary to maintain her income at a level of at least 125 percent of the Poverty Line for her household size.

166.    Mr. R. Abdelhoq's responsibility to provide income support commenced on January 17, 2013 when Plaintiff became a conditional lawful permanent resident of the United States.

167.    All conditions precedent to Defendant's duty to perform on the Primary Affidavit of Support were fulfilled as of January 17, 2013.

168.    Mr. R. Abdelhoq has breached the Primary Affidavit of Support by failing to provide income support to Ms. Ibrhim.

169.   As a result of Mr. R. Abdelhoq's breach, Ms. Ibrhim has suffered damages in an amount of $109,451.50, plus an additional amount accrued as of January 1, 2022 to be determined at trial.

**2 – Breach of contract – Muhammad Abdelhoq (Joint Sponsor Affidavit of Support).**

170.   Ms. Ibrhim re-alleges and incorporates all paragraphs above as though fully stated herein.

171.   By executing the Joint Sponsor Affidavit of Support, Mr. M. Abdelhoq entered into an express written contract with the United States Government.

172.   Ms. Ibrhim is a third-party beneficiary of the Joint Sponsor Affidavit of Support.

173.   Ms. Ibrhim has standing as third-party to enforce her rights under the Joint Sponsor Affidavit of Support.

174.   Under the express terms of the Joint Sponsor Affidavit of Support, Mr. M. Abdelhoq agreed to provide Ms. Ibrhim with any support necessary to maintain her income at a level of at least 125 percent of the Poverty Line for her household size.

175.   Mr. M. Abdelhoq's responsibility to provide income support commenced on January 17, 2013 when Plaintiff became a conditional lawful permanent resident of the United States.

176.    All conditions precedent to Mr. M. Abdelhoq's duty to perform on the Affidavit of Support were fulfilled as of January 17, 2013.

177.    Mr. M. Abdelhoq has breached the Joint Sponsor Affidavit of Support by failing to provide income support to Ms. Ibrhim.

178.    As a result of Mr. M. Abdelhoq's breach, Ms. Ibrhim has suffered damages in an amount of $109,451.50, plus an additional amount accrued as of January 1, 2022 to be determined at trial.

**3 – Breach of contract – Chafica S. Abdelhoq (Household Member Contract).**

179.    By executing the Household Member Contract, Defendant Chafica S. Abdelhoq entered into an express written contract with Defendant M. Abdelhoq.

180.    Ms. Ibrhim is a third-party beneficiary of the Household Member Contract.

181.    Ms. Ibrhim has standing as third-party to enforce her rights under the Household Member Contract.

182.    Under the express terms of the Household Member Contract, Ms. Abdelhoq agreed to provide Mr. M. Abdelhoq with any support necessary to maintain Ms. Ibrhim at an income that is at least 125 percent of the Poverty Line for her household size.

183.    Ms. Abdelhoq's responsibility to provide income support commenced on January 17, 2013 when Ms. Ibrhim became a conditional lawful permanent resident of the United States.

184.    All conditions precedent to Ms. Ms. Abdelhoq's duty to perform on the Affidavit of Support were fulfilled as of January 17, 2013.

185.    Ms. Abdelhoq has breached the Affidavit of Support by failing to provide income support to Ms. Ibrhim.

186.    As a result of Ms. Abdelhoq's breach, Ms. Ibrhim has suffered damages in an amount of $109,451.50, plus an additional amount accrued as of January 1, 2022 to be determined at trial.

## VI. REQUEST FOR RELIEF

Plaintiff requests the following relief from the Court:

A.    Entry of judgment against the Defendants and in favor of Plaintiff on each and every cause of action asserted herein.

B.    An award of actual damages in the amount of $109,451.50 through December 31, 2021.

C.    An award of actual damages in an amount equivalent to 125% of the poverty line for a household size of one for the period from January 1, 2022, to the date on which judgment issues.

D.    A declaration that Plaintiff is entitled to continued receipt of financial support from Defendant in the amount of 125% the poverty line for her

1  household size, less actual income, until the occurrence of one of the Terminating

2  Events.

3  E.  An order of specific performance, requiring Defendants to make monthly

4  payments to Plaintiff for the amount set forth in Paragraph D above, until such

5  time as a Terminating Event occurs. That such payments shall be due by the

6  fifth calendar day of each month and deposited in the trust fund of Plaintiff's law

7  firm.

8  F.  An award of all Plaintiff's attorney fees and costs per 8 U.S.C. § 1183a(c)

9  and the fee and cost provision within the Affidavit of Support contracts.

10  G.  The right to amend this complaint to conform to the evidence presented at

11  trial.

12  H.  Such other and further relief in Plaintiff's favor as the Court may deem

13  just and equitable under the circumstances.

14

15  Dated: July 13, 2022,

16

17  By: _____
   Greg McLawsen

18  SBA (Washington) #41870
   *Pro hac vice admission impending*

19

   SOUND IMMIGRATION
20  113 Cherry St., ECM# 45921
   Seattle, WA 98104-2205

21

   Tel. (855) 809-5115
22  greg@soundimmigration.com

23

## Appendix

| Year | 125% Poverty line | Taxable income | Damages |
|------|-------------------|----------------|---------|
| 2014 | $14,587.50 | $210 | $14,377.50 |
| 2015 | $14,712.50 | $0 | $14,712.50 |
| 2016 | $14,850.00 | $4,838 | $10,012 |
| 2017 | $15,070.00 | $2,057 | $13,013 |
| 2018 | $15,175.00 | $1,599 | $13,576 |
| 2019 | $15,612.50 | $0 | $15,612.50 |
| 2020 | $15,950.00 | $983 | $14,967 |
| 2021 | $16,100.00 | $2,919 | $13,181 |
| | | Total: | **$109,451.50** |

## Exhibit list

*The following list is provided for ease of reference and does not constitute an independent allegation. All redactions in the exhibits marked "Redacted" were added to comply with Fed. R. Civ. Pro. 5.2.*

**Exhibit 1** – Primary Affidavit of Support

**Exhibit 2** – Joint Sponsor Affidavit of Support

**Exhibit 3** – Household Member Contract

**Exhibit 4** – Visa Petition

**Exhibit 5** – Residency Application

**Exhibit 6** – Removal of Conditions Petition

**Exhibit 7** – Divorce Judgment

**Exhibit 8** – Notice to Appear

**Exhibit 9** – Social Security Statement

**Exhibit 10** – Employment Authorization Document (EAD) approval