IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| KHOLOUD IBRHIM,<br><br>            Plaintiff,<br><br>vs.<br><br>ROBBIE MUHAMMAD ABDELHOQ, *et al.*,<br><br>            Defendants. | CASE NO. 3:22-cv-01260-DAC<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

**INTRODUCTION**

      This is an action for immigration financial support under 8 U.S.C. § 1183a by Plaintiff Kholoud Ibrhim against Defendants Robbie Abdelhoq (her ex-husband) and his parents Muhammad and Chafica Abdelhoq.[1] Ms. Ibrhim seeks support based on the documents the Abdelhoqs submitted to the federal government when Ms. Ibrhim immigrated to the United States. (ECF #1 at PageID 2). The Abdelhoqs deny they breached their support obligations and raise several affirmative defenses. (ECF #17). All parties consented to my exercising jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (ECF #28).

      Before me is Ms. Ibrhim's motion for partial judgment on the pleadings seeking judgment in her favor on all affirmative defenses the Abdelhoqs assert. (ECF #34). For the reasons that follow, I **GRANT** Ms. Ibrhim's motion.

---

      [1]      Because Robbie, Muhammad, and Chafica all share the same surname, I refer to them individually by first name and collectively as "the Abdelhoqs."

1

## BACKGROUND

Ms. Ibrhim and Robbie married in 2012. (ECF #1 at PageID 10). Ms. Ibrhim is a citizen of Palestine now residing in the United States. (*Id.* at PageID 4). Robbie is a United States citizen. (*Id.*). In April 2012, Robbie filed a petition for a family-based immigrant visa so Ms. Ibrhim could become a United States permanent resident. (*Id.* at PageID 11).

Federal immigration law forbids admission to the United States of any alien who "is likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A); *see also id.* § 1601(2)(A)(5). But an applicant for a family-based immigrant visa can overcome public-charge inadmissibility by having a person execute an affidavit of support to sponsor the immigrant. *See* 8 C.F.R. §§ 213a.2(a), (b); *see also* 8 U.S.C. § 1182(a)(4)(C)(ii). By executing the affidavit, the sponsor agrees to provide support to maintain the sponsored immigrant at an annual income that is not less than 125% of the federal poverty line during the period in which the affidavit is enforceable. 8 U.S.C. § 1183a(a)(1)(A). As a part of sponsoring Ms. Ibrhim's immigration to the United States, Robbie executed an affidavit of support promising to financially support her. (ECF #1-1 at PageID 29).

To serve as a sponsor, a person must meet certain minimum income requirements. 8 U.S.C. § 1183a(f)(1). Where a potential sponsor cannot meet those requirements, a "joint sponsor" may execute an additional affidavit of support and accept joint and several liability with the sponsor for the obligations of the affidavit of support. *Id.* § 1183a(f)(5)(A). Because Robbie did not meet the income requirements to serve as a sponsor by himself, his father Muhammad also executed an affidavit of support as a joint sponsor of Ms. Ibrhim. (ECF #1-2 at PageID 38). Additionally, a sponsor may rely on the income of a household member if that household member executes a "household-member contract," agreeing to assist the sponsor with meeting the financial

2

obligations of the affidavit of support. 8 C.F.R. § 213a(c)(2)(i)(C)(1)(2). To that end, Chafica (Muhammad's spouse) also executed a household-member contract, agreeing to support Muhammad's joint-sponsor obligations. (ECF #1-3 at PageID 47).

## DISCUSSION

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991). Ms. Ibrhim does not seek judgment on the pleadings as to her claims, but rather seeks judgment as to the Abdelhoqs' affirmative defenses, or in the alternative, to strike any deficient defenses under Rule 12(f). (ECF #34 at PageID 317). Where a plaintiff seeks judgment on the pleadings as to a defendant's affirmative defenses, courts look to see if the defendant's answer raises issues of fact or an affirmative defense, which, if proved, would defeat plaintiff's recovery. *See Qwest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D.Cal. 2002) (plaintiff's motion for judgment on the pleadings can be granted only if all affirmative defenses raised in answer are legally insufficient); *Lee v. Robinson, Raegan & Young, PLLC*, No. 3:14-CV-0748, 2015 WL 328323, at *1 (M.D. Tenn. Jan. 26, 2015).

In evaluating a Rule 12(c) motion, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). But a court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* Additionally, the court may consider documents attached to and referenced in the

3

pleadings in ruling on a Rule 12(c) motion without converting the motion into a motion for summary judgment. *Barany-Snyder v. Werner*, 539 F.3d 327, 333 (6th Cir.2008).

The Abdelhoqs' joint answer raised nine affirmative defenses: (1) failure to state a claim upon which relief can be granted, (2) the earlier divorce judgment precludes this claim, (3) statutory non-compliance, (4) failure to mitigate damages, (5) lack of condition precedent or condition subsequent, (6) lack of consideration, (7) laches, (8) unjust enrichment, and (9) performance of duties. (ECF #17 at PageID 203-04). Ms. Ibrhim argues she is entitled to judgment in her favor on all affirmative defenses for four reasons: (i) defenses 1, 2, 5, 6, and 8 do not meet the required pleading standard; (ii) defenses 1 and 3 are wrong; (iii) federal law bars sponsors from raising common-law defenses to contracts such as defenses 2, 4, 5, 6, 7, and 8 in actions to enforce an affidavit of support; and (iv) defense 9 is a denial of liability, not an affirmative defense. (*See* ECF #34 at PageID 316).

**I.      The failure-to-state-a-claim defense fails because the Court previously held Ms. Ibrhim has made out a federal cause of action.**

The Abdelhoqs' first affirmative defense is that Ibrhim "has failed to state a claim upon which relief can be granted." (ECF #17 at PageID 203). But before the parties consented to my jurisdiction, the previously assigned District Judge already decided the issue of whether Ms. Ibrhim has stated a cognizable cause of action. In his June 6, 2023 order addressing subject-matter jurisdiction, Judge Zouhary held "that Section 1183a 'creates a federal cause of action so that 'the sponsored alien, the Federal Government, [or] any State' may enforce a support Affidavit against a sponsor. This federal cause of action gives the sponsored immigrant enforcement rights that he would not necessarily have under contract law.'" *Ibrhim v. Abdelhoq*, 676 F.Supp.3d 575, 579 (N.D. Ohio 2023) (citations omitted). To plead such an action, Ms. Ibrhim must allege she was the

4

beneficiary of an executed affidavit of support (or household-member contract) and the sponsor failed to maintain her income at not less than 125% of the federal poverty line for her household size. *See Mao v. Bright*, 645 F.Supp.3d 805, 813 (S.D. Ohio 2022) (articulating the elements of the claim in the context of a preliminary injunction). Ms. Ibrhim has alleged each of these elements in her complaint and attached to the complaint the affidavits of support and the household-member contract executed by the Abdelhoqs. (ECF #1 at PageID 22-25; ECF #1-1, ECF #1-2, ECF #1-3).

Consequently, Ms. Ibrhim has stated a claim upon which relief can be granted and is entitled to judgment as a matter of law on the Abdelhoqs' first affirmative defense asserting that no such claim has been stated.

**II.     The defenses of failure to mitigate damages, lack of condition precedent or condition subsequent, lack of consideration, laches, and unjust enrichment are barred in this case.**

Second, Ms. Ibrhim argues that common-law defenses to a contract are not available to a defendant in an action to enforce an affidavit of support. (ECF #34 at PageID 321). Specifically, Ms. Ibrhim argues the Abdelhoqs' affirmative defenses of failure to mitigate damages, lack of a condition precedent or condition subsequent, lack of consideration, laches, and unjust enrichment are unavailable to sponsors. (*Id.* at PageID 325-26).

While such an action alleges a breach of a contract, three different circuit courts have held that traditional common-law contract defenses are largely unavailable in the context of an alleged breach of an affidavit of support. *See Belevich v. Thomas*, 17 F.4th 1048, 1050-51 (11th Cir. 2021), *cert. denied*, 142 S.Ct. 2754 (2022); *Erler v. Erler*, 824 F.3d 1173, 1177-80 (9th Cir. 2016); *Liu v. Mund*, 686 F.3d 418, 422-23 (7th Cir. 2012), *as amended* (July 27, 2012). In those cases, the courts each held common-law defenses are unavailable where those defenses undermine the purpose of the federal statute by rendering it more likely for a sponsored immigrant to be a public charge or

5

by encouraging sponsors to enter affidavits of support incautiously. *See Belevich*, 17 F.4th at 1052-54; *Erler*, 824 F.3d at 1179; *Liu*, 686 F.3d at 421-23. Although the Sixth Circuit has not addressed whether traditional common-law defenses to a contract are available in actions to enforce an affidavit of support, at least one other district court in this circuit has applied those cases to bar such defenses. *Mao*, 645 F.Supp.3d at 810-11 (applying the rationale in *Erler* and *Liu* to reject a sponsor's argument that a sponsored immigrant's waiver of spousal support in a divorce action bars enforcement of an affidavit of support). I see no reason to depart from this body of law in evaluating the affirmative defenses the Abdelhoqs raise here.

**Defense 4: Failure to mitigate damages.** In their fourth defense, the Abdelhoqs assert "[Ms. Ibrhim] failed to mitigate damages, specifically by unreasonably delaying the filing of this lawsuit. [Ms. Ibrhim]'s claims should be dismissed." (ECF #17 at PageID 203). Multiple courts have held that the defense of failure to mitigate damages is not available to a sponsor because the defense undermines the purposes of the affidavit of support. *See, e.g.*, *Liu*, 686 F.3d at 422-23 (holding affirmative defense of failure to mitigate damages not available to sponsors); *Asilonu v. Asilonu*, 550 F.Supp.3d 282, 293 (M.D.N.C. 2021) (same); *Liu v. Kell*, 299 F.Supp.3d 1128, 1133 (W.D. Wash. 2017) (finding that immigrant's failure to mitigate defense is impermissible as a matter of law even if immigrant willfully failed to seek employment); *Allen v. Goard*, No. 14-61147-CIV, 2014 WL 11776965, at *3 (S.D. Fla. Sept. 5, 2014) ("There are no provisions requiring—or even suggesting—that an immigrant has a duty to find work or a duty to otherwise mitigate the sponsor's financial obligations.").

The Abdelhoqs admit in their answer that Robbie executed a primary affidavit of support, Muhammad executed a joint sponsor affidavit of support, and Chafica executed a household-

6

member contract with Ms. Ibrhim as the immigrant beneficiary. (ECF #17 at PageID 193; ECF #1 at PageID 12-13). Thus, there is no dispute that the Abdelhoqs are sponsors of Ms. Ibrhim's immigration to the United States. Because the Abdelhoqs are sponsors, as a matter of law, they cannot raise as a failure-to-mitigate-damages defense to an affidavit of support. Consequently, Ms. Ibrhim is entitled to judgment as a matter of law in her favor on the Abdelhoq's fourth affirmative defense.

**Defense 5: Failure of condition precedent or condition subsequent.** In their fifth defense, the Abdelhoqs assert "[Ms. Ibrhim] failed a condition precedent or subsequent [and] [Ms. Ibrhim]'s claim should be dismissed." (ECF #17 at PageID 203). In their response to the motion for judgment on the pleadings, the Abdelhoqs assert Ms. Ibrhim's income did not fall below the threshold of 125% of the applicable federal poverty line and thus any alleged obligation was not triggered or that the Abdelhoqs were excused from performance. (ECF #40 at PageID 403).

In the June 6 order, Judge Zouhary concluded "[t]he statute and the applicable regulation define the scope of the sponsors' obligations, including the relevant terminating events." (ECF #23 at PageID 281). Consequently, § 1183a and the applicable regulations at 8 C.F.R. Part 213a – and not state contract law – delineate when a sponsor's duties commence and terminate. *Belevich*, 17 F.4th at 1051; *see* 8 U.S.C. § 1183a(a); 8 C.F.R. § 213a.2(e)(1). Specifically:

> With respect to any intending immigrant, the support obligation and change of address obligation imposed on a sponsor, substitute sponsor, or joint sponsor under an affidavit of support, and any household member's support obligation under an affidavit of support attachment, all begin when the immigration officer or the immigration judge grants the intending immigrant's application for admission as an immigrant or for adjustment of status on the basis of an application for admission or adjustment that included the affidavit of support or an affidavit of support attachment.

7

8 C.F.R. § 213a.2(e)(1). Thus, the only condition precedent that triggers a sponsor's obligation to provide support is the granting of the sponsored immigrant's application for admission or adjustment of status. A sponsored immigrant's income being above 125% of the applicable poverty line is not an enumerated condition that triggers a sponsor's obligation to support the sponsored immigrant, though the amount of support necessary may be zero. Similarly, a sponsor's obligations do not commence when the sponsored immigrant requests support from the sponsor. So long as the affidavit of support is executed and the sponsored immigrant's application is accepted, the sponsor's obligation to provide the necessary support are triggered.

The Abdelhoqs admit in their answer that Robbie executed a primary affidavit of support, Muhammad executed a joint sponsor affidavit of support, and Chafica executed a household-member contract, each with Ms. Ibrhim as the intended immigrant beneficiary. (ECF #17 at PageID 193; ECF #1 at PageID 12-13). Ms. Ibrhim applied for permanent residency and was approved on January 17, 2013. (ECF #1-5 at PageID 55). Consequently, there is no dispute that the Abdelhoqs' obligation to support Ms. Ibrhim commenced that same day. *See* 8 C.F.R. § 213.a2(e)(1).

The available conditions that terminate a sponsor's obligation are also enumerated in the statute and its regulations. *See* 8 U.S.C. § 1183a(a)(2), (3); 8 C.F.R. § 213a.2(e)(2). Specifically, a sponsor's obligation to support a sponsored immigrant terminates when (1) the sponsored immigrant becomes a United States citizen, (2) the sponsored immigrant works 40 qualifying quarters, (3) the sponsored immigrant ceases to hold permanent resident status and departs the United States, (4) the sponsored immigrant obtains a grant of adjustment of status as relief from removal, or (5) the sponsored immigrant or the sponsor dies. *See* 8 U.S.C. §§ 1183a(a)(2)-(3);

8

8 C.F.R. §§ 213a.2(e)(2)(i)-(ii). This list of terminating events is the exclusive means of terminating a sponsor's obligations. *See Belevich*, 17 F.4th at 1052. Thus, a sponsored immigrant's income being above 125% of the applicable poverty limit is not a condition subsequent because it does not terminate a sponsor's obligation to support the sponsored immigrant, although the amount of support necessary may be zero. *See Burkhalter v. Burkhalter*, No. EDCV 19-272 JGB, 2021 WL 6102423, at *2 (C.D. Cal. Sept. 9, 2021) (limiting a sponsor's defense of condition subsequent to only the enumerated terminating events).

Neither Ms. Ibrhim nor the Abdelhoqs allege that any of the enumerated terminating events have occurred. The Abdelhoqs only allege Ms. Ibrhim's income was above 125% of the applicable federal poverty level. This is not an enumerated terminating event and thus the Abdelhoqs' performance is not excused. Thus, there is no dispute of fact that the conditions under federal law that commence a sponsor's duties were met and that no conditions under federal law that terminate a sponsor's duties were met. Consequently, Ms. Ibrhim is entitled to judgment as a matter of law as to the Abdelhoqs' affirmative defense of a lack of condition precedent or a condition subsequent.

Critically, however, Ms. Ibrhim's motion does not seek judgment on the pleadings for her claims against the Abdelhoqs – only as to their affirmative defenses. The Abdelhoqs are permitted to argue they did not breach the support contract because they performed all their contractual obligations. *See Asilonu*, 550 F.Supp.3d at 294 (dismissing affirmative defenses but permitting defendant to argue that she did not breach the affidavit of support because she performed her contractual obligations and that if she is found liable, her financial support of plaintiff and

9

plaintiff's income, if any, will be considered when damages are calculated.). Likewise, the Abdelhoqs may fully argue any damages they may owe are offset by Ms. Ibrhim's income. *Id.*

**Defense 6: Lack of consideration.** In their sixth defense, the Abdelhoqs assert Ms. Ibrhim "lacks consideration for any alleged contract" and thus her claim should be dismissed. (ECF #17 at PageID 203). In response, the Abdelhoqs argue:

> [Ibrhim] "obtained permanent resident status under false pretenses," when she entered into the marriage in good-faith but knew or believed that Robbie was ineligible to marry her at that time. Given that the "consideration" was obtained fraudulently, it is unclear how [Ms. Ibrhim] is entitled to any benefit from these Affidavits of Support.

(ECF #40 at PageID 404) (citation and footnote omitted). Thus, the defense does not argue there is no consideration for the affidavits of support and is essentially that Ms. Ibrhim fraudulently induced the Abdelhoqs to enter the affidavits of support.

Fraudulent inducement is an equitable defense to a contract that allows the defrauded party to rescind the contract where the party's assent "was induced by either a fraudulent or material misrepresentation by the other party upon which the recipient was justified in relying." Restatement (Second) of Contracts § 164 (Am. Law Inst. 1981). It does not render a contract void. As mentioned previously, nothing in the statutory or regulatory structure contemplates an equitable remedy or defense for the benefit of a sponsor. *Belevich*, 17 F.4th at 1053; *see also Liu*, 686 F.3d at 422 ("The only beneficiary of [these equitable defenses] would be the sponsor—and it is not for [her] benefit that the duty of support was imposed.").

Multiple district courts have held that the defenses of fraud and fraudulent inducement are inconsistent with the purpose of the statutory scheme and thus not permitted. *See Dorsaneo v. Dorsaneo*, 261 F.Supp.3d 1052, 1054-55 (N.D. Cal. 2017), *aff'd*, 780 F.App'x 532 (9th Cir. 2019); *Skorychenko v. Tompkins*, No. 08-CV-626-BBC, 2009 WL 3126379, at *3 (W.D. Wis. Sept. 28,

2009); *Anderson v. United States*, No. C17-0891RSL, 2019 WL 11866989, at *2 (W.D. Wash. Feb. 25, 2019). At least one court has suggested a fraudulent-inducement defense could lift the obligation, but there was insufficient evidence of fraud in that case. *Matloob v. Farhan*, No. 11-cv-01943, 2014 WL 1401924, at *3 (D. Md. Apr. 9, 2014) ("Where a sponsored immigrant 'never intended to enter into a lasting marital relationship, but was merely using the sponsor to gain immigrant status,' it could be argued that the marriage was the result of fraudulent inducement on the part of the sponsored immigrant.") (quoting *Cheshire v. Cheshire*, No. 05-cv-00453, 2006 WL 1208010, at *4 (M.D. Fla. May 4, 2006)). Nonetheless, the substantially greater weight of caselaw holds that fraudulent inducement is not a viable defense for sponsors. *Dorsaneo v. Dorsaneo*, 780 F.App'x 532, 533 (9th Cir. 2019) ("Edward pled and argues that his obligation should never have attached because Tetyana made untruthful representations to him, and those induced him to marry her and sign the I-864 contract. However, nothing in the statutes, the regulations, or the I-864 contract so provides.").

Consequently, Ms. Ibrhim is entitled to judgment as a matter of law on the Abdelhoqs' affirmative defense of lack of consideration.

**Defense 7: Laches.** In their seventh defense, the Abdelhoqs assert "[Ms. Ibrhim] waited an unreasonably long time to file this lawsuit and severely prejudiced [the Abdelhoqs]' ability to defend this lawsuit due to unreasonable delay." (ECF #17 at PageID 203). The Abdelhoqs do not address the defense of laches in their response or sur-reply to Ms. Ibrhim's motion for judgment on the pleadings.

Multiple courts have held that the defense of laches is not available to a sponsor because the defense undermines the purposes of the affidavit of support. *See, e.g.*, *Shagoofa v. Eshaqzi*,

11

No. 8:22-cv-01824, 2024 WL 1600657, at *4 (C.D. Cal. Feb. 26, 2024) (affirmative defense of laches not available to sponsors, among other defenses); *Cyrousi v. Kashyap*, 386 F.Supp.3d 1278, 1284 (C.D. Cal. 2019) (same). Courts have refused to apply similar equitable defenses to a contract to affidavits of support. *See Belevich*, 17 F.4th at 1053 (holding affirmative defense of unclean hands and equitable estoppel for wrongful acts, among others not available to sponsors).

Because the Abdelhoqs are sponsors, as a matter of law, they cannot raise laches as a defense to an affidavit of support. Consequently, Ibrhim is entitled to judgment as a matter of law in her favor on the Abdelhoqs' seventh affirmative defense.

**Defense 8: Unjust enrichment.** In their eighth defense, the Abdelhoqs assert "[Ms. Ibrhim] is seeking to recover more than [Ms. Ibrhim] is entitled to recover in this case, and award of the judgment sought by [Ms. Ibrhim] would unjustly enrich [Ms. Ibrhim]." (ECF #17 at PageID 203). In response, the Abdelhoqs argue this defense alongside their laches defense, asserting that "[Ms. Ibrhim] has been eligible for public assistance for four years before she filed this suit and seeks to recover damages during the time when she could have been working and/or receiving public assistance." (ECF #40 at PageID 405). Thus, this defense essentially reiterates the previously addressed failure-to-mitigate-damages and laches defenses, both of which are barred.

Consequently, Ms. Ibrhim is entitled to judgment as a matter of law on the Abdelhoqs' eighth affirmative defense. Again, Ms. Ibrhim's motion does not seek judgment on the pleadings for her own claims against the Abdelhoqs, only their affirmative defenses. If found liable, the Abdelhoqs may argue that Ms. Ibrhim's income must be considered when calculating any damages to avoid unjust enrichment. *See Asilonu*, 550 F.Supp.3d at 294.

**III. The claim-preclusion defense fails because the previous divorce action did not decide the claims under the affidavit of support raised here.**

The Abdelhoqs' second affirmative defense is that "[Ms. Ibrhim] failed to raise these claims during [Ms. Ibrhim]'s divorce with [Robbie] [and thus Ms. Ibrhim]'s claims should be dismissed. (ECF #17 at PageID 203). The Abdelhoqs do not address this defense in their response or sur-reply to Ms. Ibrhim's motion for judgment on the pleadings.

The divorce judgment between Ms. Ibrhim and Robbie concerned their legal separation and the decree set forth their rights and obligations as a previously married couple under *Ohio* law. In contrast, the affidavit of support arises under *federal* law and concerns the Abdelhoqs' financial obligations as Ms. Ibrhim's immigration sponsors and the alleged breach of those obligations. *Mao*, 645 F.Supp.3d at 811 (holding an Ohio divorce judgment does not bar litigating an affidavit for support in a separate action federal court); *Erler*, 824 F.3d at 1777 ("under federal law, neither a divorce judgment nor a premarital agreement may terminate an obligation of support."); *Liu*, 686 F.3d at 419-20 ("[t]he right of support conferred by federal law exists apart from whatever rights [a sponsored immigrant] might or might not have under [state] divorce law."). While not binding, the administrative form of the affidavit of support, Form I-864, states that divorce will not terminate the obligation of support. (ECF #1-1 at PageID 35; ECF #1-2 at PageID 43). Thus, the prior divorce proceeding between Ms. Ibrhim and Robbie in Ohio state court does not preclude an action in federal court seeking to enforce obligations alleged to be owed under federal law.

Consequently, Ms. Ibrhim is entitled to judgment as a matter of law on the Abdelhoqs' second affirmative defense.

13

### IV. The failure-to-comply-with-statute defense fails because the Abdelhoqs have not identified any statutory noncompliance.

In their third affirmative defense, the Abdelhoqs assert that because Ms. Ibrhim "failed to comply with Statute, [her] claim should be dismissed." (ECF #17 at PageID 203). The Abdelhoqs do not explain in either their response or sur-reply the statute to which they refer, how Ms. Ibrhim did not comply with that statute, or how that noncompliance constitutes a defense to enforcement of the affidavits of support. Because the Abdelhoqs have not developed any facts supporting this affirmative defense, and because equitable defenses for the sponsored immigrant's alleged wrongful acts are not available to sponsors as a matter of law, Ms. Ibrhim is entitled to judgment as a matter of law on the Abdelhoqs' third affirmative defense. *See Belevich*, 17 F.4th at 1053.

### V. I decline to reach the issue of the pleading requirements of affirmative defenses.

Finally, Ms. Ibrhim argues that all the Abdelhoqs' affirmative defenses are insufficient as a matter of law because they fail the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (ECF #34 at PageID 317-19). *Twombly* held that for a complaint to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *Iqbal* clarified the plausibility standard articulated in *Twombly*. *Iqbal*, 556 U.S. at 663 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The Sixth Circuit has not addressed whether *Twombly* and *Iqbal* apply to all pleadings, including defenses pled in an answer, or if they only apply to complaints. *See Depositors Ins. Co. v. Estate of Ryan*, 637 F.App'x 864, 869 (6th Cir. 2016) ("It seems this circuit has not addressed the

14

precise issue of whether the *Twombly/Iqbal* heightened pleading standard applies to affirmative defenses."). Judges in this district have reached different resolutions of the issue. *Contrast Greenberger v. Bober, Markey, Fedorovich & Co.*, 343 F.R.D. 375, 377 (N.D. Ohio 2023) ("*Twombly* and *Iqbal* did not change the pleading practice within this Circuit for defenses") *with HCRI TRS Acquirer, LLC v. Iwer*, 708 F.Supp.2d 687, 691 (N.D. Ohio 2010) ("Therefore, both complaints and affirmative defenses should provide enough notice to the opposing party that indeed there is some plausible, factual basis for the assertion and not simply a suggestion of the possibility that it may apply to the case.") (quotation omitted). Other district courts in the Sixth Circuit have not reached a consensus. *See High 5 Sportswear, Inc. v. High 5 Gear, Inc.*, No. 3:15-CV-00401, 2016 WL 4126518, at *3 (S.D. Ohio Aug. 3, 2016) (collecting cases). Because the affirmative defenses are each otherwise prohibited as a matter of law in this case, I need not decide this issue.

## CONCLUSION

For the foregoing reasons, Ms. Ibrhim is entitled to judgment as a matter of law in her favor as to the Abdelhoq's affirmative defenses. I thereby **GRANT** her Motion for Judgment on the Pleadings as to Affirmative Defenses. (ECF #34).

**IT IS SO ORDERED.**

Dated: July 24, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE